Mette H. Kurth (SBN 187100)
Beth Brownstein (*pro hac vice* application pending)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:  213.629.7400
Facsimile:  213.629.7401
E-mail:      mette.kurth@arentfox.com
              beth.brownstein@arentfox.com

*Proposed* Bankruptcy Counsel for Debtor and
Debtor in Possession

Debtor's Mailing Address
2652 Long Beach Avenue
Los Angeles, CA 90058

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**NEW  MEATCO PROVISIONS, LLC, d/b/a KING SEAFOOD**<br><br>Debtor and Debtor in Possession. | Case No.:  2:13-bk-22155<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (A) AUTHORIZING POSTPETITION FINANCING; (B) GRANTING SECURITY INTERESTS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) MODIFYING THE AUTOMATIC STAY; (D) GRANTING ADEQUATE PROTECTION; AND (E) SCHEDULING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       TBD<br>Time:       TBD<br>Location:  Courtroom 1652<br>                  Roybal Federal Building<br>                  255 East Temple Street<br>                  Los Angeles, CA  90012 |

1

# TABLE OF CONTENTS

2

|  |  | Page |
|---|---|---|
| I. | STATEMENT OF FACTS | 1 |
| | A. Company Overview | 1 |
| | B. Events Leading to this Chapter 11 Filing | 1 |
| | C. New Meatco's Goals for This Chapter 11 Case | 3 |
| | D. New Meatco's Balance Sheet | 5 |
| | 1. Corporate Ownership | 5 |
| | 2. The Company's Assets | 5 |
| | 3. The Company's Liabilities | 5 |
| | E. The Immediate Need for Financing | 7 |
| | F. The Postpetition Financing and Summary of the Terms Contained in the Postpetition Loan | 8 |
| | G. Adequate Protection for the Second Lien Lenders | 9 |
| | H. Local Rule 4001-2 Disclosures | 10 |
| II. | ARGUMENT | 10 |
| | A. Emergency Consideration of this Motion is Appropriate | 10 |
| | B. Approving the Postpetition Loan Agreement Is Appropriate | 11 |
| | A. New Meatco Has Satisfied the Requirements Under Bankruptcy Code § 364(c) and Should Be Allowed to Borrow on a "Super-priority" and Senior Secured Basis | 12 |
| | B. New Meatco Has Satisfied the Requirements of Bankruptcy Code § 364(d) | 13 |
| | C. The Postpetition Financing Is Supported by the Exercise of Sound Business Judgment and Good Faith | 13 |
| III. | REQUEST FOR FINAL HEARING | 15 |
| IV. | WAIVER OF BANKRUPTCY RULE 6004(H) | 16 |
| V. | CONCLUSION | 16 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/1422411.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.),*
   789 F.2d 1085 (4th Cir. 1986) ................................................................................ 11

*Burchinal v. Cent. Washington Bank (In re Adams Apple, Inc.),*
   829 F.2d 1484 (9th Cir. 1987) ................................................................................ 15

*In re Ames Dep't Stores, Inc.,*
   115 B.R. 34 (Bankr. S.D.N.Y. 1990)................................................................. 11, 13, 14

*In re FCX, Inc.,*
   54 B.R. 833 (Bankr. E.D.N.C. 1985) ..................................................................... 15

*In re Keystone Camera Prods. Corp.,*
   126 B.R. 177 (Bankr. D.N.J. 1991) ....................................................................... 15

*In re Reading Tube Indus.,*
   72 B.R. 329 (Bankr. E.D. Pa. 1987) ...................................................................... 11

*In re Stacy Farms,*
   78 B.R. 494 (Bankr. S.D. Ohio 1987) .................................................................... 11

*In re Stein & Day, Inc.,*
   87 B.R. 290 (Bankr. S.D.N.Y. 1988) ..................................................................... 15

*Resolution Trust Corp. v. Official Unsecured Creditors Comm. (In re Defender*
   *Drug Stores, Inc.),*
   145 B.R. 312 (B.A.P. 9th Cir. 1992) ...................................................................... 13

*Richmond Leasing v. Capital Bank, N.A.,*
   762 F.2d 1303 (5th Cir. 1985) ............................................................................... 13

*Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In*
   *re Ellingsen MacLean Oil Co.),*
   65 B.R. 358 (W.D. Mich. 1986), *aff'd,* 834 F.2d 599 (6th Cir.1987) ...................... 15

RULES

Bankruptcy Rule 4001(c) ............................................................................................. 15

Fed. R. Bankr. P. 1007(d) ............................................................................................ 15

Fed. R. Bankr. P. 2081-1(a)(9) .................................................................................... 11

Fed. R. Bankr. P. 4001 ................................................................................................. 16

Fed. R. Bankr. P. 4001(c) ............................................................................................ 10

Fed. R. Bankr. P. 4001(c)(2) ....................................................................................... 10

Fed. R. Bankr. P. 6004(h)............................................................................................. 16

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

Local Rule 4001-2 ................................................................................................ 10

**STATUTES**

11 U.S.C. § 364 ................................................................................ 11, 13, 15

11 U.S.C. § 364(a) .................................................................................... 11

11 U.S.C. § 364(c) .................................................................................. 12, 13

11 U.S.C. § 364(c)(1) ........................................................................... 9, 12, 13

11 U.S.C. §§ 364(c)(1)-(3) ..................................................................... 12, 13

11 U.S.C. § 364(c)(2) ................................................................................... 8

11 U.S.C. § 364(d) ................................................................................... 8, 13

11 U.S.C. § 364(d)(1) ................................................................................... 13

11 U.S.C. § 364(d)(1)(A) ............................................................................. 11

11 U.S.C. § 364(e) ...................................................................................... 14

11 U.S.C. § 547 ...................................................................................... 8, 12

11 U.S.C. § 548 ...................................................................................... 8, 12

11 U.S.C. § 1108 ................................................................................... 11, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/1422411.1

1  **TO THE HONORABLE RICHARD M. NEITER, UNITED STATES**

2  **BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE;**

3  **THE DEBTOR'S SECURED LENDERS; THE DEBTOR'S 20 LARGEST**

4  **UNSECURED CREDITORS; AND ALL PARTIES ENTITLED TO SPECIAL**

5  **NOTICE:**

6      New Meatco Provisions, LLC, d/b/a King Seafood ("New Meatco") hereby

7  requests that this Court enter an emergency, interim order (the "Interim Order") in

8  substantially the form of **Exhibit 1** approving postpetition financing for New Meatco.

9  New Meatco also requests that this Court schedule a final hearing on this Motion and

10 thereafter enter a final order (the "Final Order") approving the postpetition financing.

11      There is good and sufficient cause to grant this Motion pursuant to Bankruptcy

12 Code sections 105, 361, 362, 363, and 364, Federal Rules of Bankruptcy Procedure 2002,

13 4001, 6004 and 9014, and Local Bankruptcy Rules 4001-2, 2002-2 and 9013.[1] Beginning

14 in April 2012, New Meatco began struggling with rapid increases in operating expenses

15 that left it unable to meet certain covenants under its secured loan agreements. The

16 company entered into workout negotiations with its lenders while it sought a financial

17 advisor to provide assistance. In November of 2012, New Meatco retained Scouler &

18 Company, LLC ("Scouler") to conduct a preliminary assessment and to provide the

19 company with financial advisory services. On January 2, 2013, Dan Scouler was

20 appointed as New Meatco's Chief Restructuring Officer. Scouler's efforts focused on

21 attempting to stem the company's losses while it worked to secure a going concern sale of

22 the business.

23      Although Scouler identified a potential buyer for New Meatco, the company

24 continued to struggle with liquidity concerns and mounting trade debt. Matters came to

25 an abrupt head in early April 2013 after Seafax Business Report changed New Meatco's

26

27 [1] This Motion is based on the annexed Memorandum of Points and Authorities; the *Declaration of Daniel Scouler in Support of Emergency "First Day" Motions* (the "Scouler Declaration"),

28 and any arguments, evidence, and representations that may be presented at or before the hearing on this Motion.

1   credit rating from "inconclusive" to "cautionary status." Following this downgrade,

2   Meatco's major suppliers cut off further shipments of inventory to the company, leaving it

3   unable continue operations and forcing it to abandon its sale efforts.

4       On April 19, 2013, New Meatco and its prepetition, senior secured lender, Wells

5   Fargo Bank, N.A. ("Wells Fargo") entered into a *Forbearance and Post Default Funding*

6   *Agreement* and *Postpetition Financing/Cash Collateral Use Consent Terms*. These

7   agreements provided limited financing to enable New Meatco to arrange for the rapid sale

8   of its inventory—perishable meat products—and to identify and monetize any remaining

9   assets. New Meatco's CRO and professionals have conducted significant due diligence

10  and investigations to identify all assets that can potentially be monetized for New

11  Meatco's estate and creditors, and they have identified significant avoidance actions and

12  other litigation assets that are available for the benefit of both secured and unsecured

13  creditors.

14      This bankruptcy filing, and the proposed postpetition financing, represents the

15  culmination of New Meatco's efforts to preserve and maximize asset value for the benefit

16  of its creditors in the aftermath of the Seafax report. After considering all options, New

17  Meatco has concluded that its assets can best be preserved and its value maximized for

18  creditors by filing a bankruptcy case for the purpose of preserving and monetizing

19  valuable avoidance actions and other litigation assets. The company carefully compared

20  the relative advantages and disadvantages of a Chapter 7 filing versus a Chapter 11 filing,

21  and it discussed its options with its principal creditors, Wells Fargo (owed approximately

22  $3.9 million on a senior, secured basis) and Wilmington Trust, N.A. (the "Agent"), as

23  agent for New Meatco's second lien lenders (owed approximately $12.8 million) (the

24  "Second Lien Lenders," and with Wells Fargo, the "Lenders"). New Meatco and its

25  Lenders concluded that, given the significant work that the CRO and the company's

26  professionals have already conducted to arrange for the orderly disposition of New

27  Meatco's affairs and to identify, preserve and pursue avoidance actions and other

28  litigation assets, the current team of professionals can most rapidly and cost effectively

1   monetize these assets for the benefit of all of New Meatco's creditors without the delay,

2   redundancy and uncertainty that would come from a Chapter 7 filing.

3       The Lenders' support for this Chapter 11 case is evidenced by Wells Fargo's

4   willingness to provide postpetition financing to New Meatco in the amount of $219,295.00

5   (the "Postpetition Financing"), and the Agent's consent to this financing.[2]  The Postpetition

6   Financing is, in essence, bridge financing to enable New Meatco to fund its operations in

7   Chapter 11 until it begins generating income from its avoidance actions.  The financing is

8   being made available to New Meatco only in the context of a Chapter 11 case and for the

9   purpose of enabling New Meatco's CRO and professionals to see through the wind down of

10  New Meatco and the preservation of its litigation assets.   A Chapter 7 filing and the

11  transition to a new team of professionals would have threatened the loss of this experience

12  and knowledge base, created redundancy and unnecessary administrative expenses, and

13  entailed the loss of the funding currently being provided by Wells Fargo.

14      To ensure that this Chapter 11 case proceeds efficiently and rapidly, New Meatco's

15  CRO and its professionals have already conducted a thorough analysis of the company's

16  avoidance actions, they have preserved the records and files needed to prosecute these

17  actions, and they have arranged for the retention of key employees needed to support this

18  endeavor.   They are in the process of sending out demand letters to the recipients of

19  potentially avoidable transfers and payments, and they anticipate that they will commence

20  litigation, as necessary, within roughly 30 days after demand letters are sent out.  They

21  have also identified key commercial tort claims, preserved the records, files, and

22  personnel needed to prosecute these claims, and they are negotiating with the Agent for

23  the Second Lien Lenders (who asserts a security interest in commercial tort claims) to

24  secure financing for the prosecution of these claims.

25      To create transparency for all creditors, New Meatco's professionals are preparing

26

---

27  [2]  The terms of the Postpetition Financing are set forth in the *Amendment Number Four to Credit and Security Agreement (Postpetition Financing)* attached to the Scouler Declaration as **Exhibit 1** (the "Postpetition Loan Agreement").   Any undefined capitalized terms used in this Motion shall have the meaning set forth in the Postpetition Loan Agreement or the Interim Order.

28

1    to promptly file a Chapter 11 plan establishing a creditor's trust for the purpose of

2    continuing the liquidating of the litigation assets and any other remnant assets in New

3    Meatco's estate and investigating and resolving claims against the estate. The Lenders

4    have been actively involved with New Meatco's CRO and professionals as they have

5    taken steps to preserve asset value, and the creation of a creditor's trust following

6    solicitation and voting on a Chapter 11 plan gives the Lenders, and other interested

7    creditors, a better opportunity for close involvement and oversight of liquidation efforts

8    than does a Chapter 7 filing. Moreover, appointing a Chapter 7 trustee at this juncture,

9    given the substantial work done by New Meatco's CRO and professionals, would

10   necessarily involve a great deal of duplication of effort and cost as the Chapter 7 trustee

11   and his professionals get up to speed.

12        New Meatco has no material cash on hand. It does not have sufficient working

13   capital to carry on its business affairs and to maintain this Chapter 11 case without the

14   Postpetition Financing. New Meatco believes that the terms of this bridge financing are

15   reasonable and appropriate under the circumstances, and it does not believe that any third

16   party is likely to provide financing to the company to support its Chapter 11 case and the

17   formulation of its Chapter 11 plan and creditor's trust.

18        Most urgently, New Meatco needs cash to pay its postpetition payroll due on May

19   22, 2013, and it has no immediate source of funds other than the Postpetition Financing.

20   It therefore respectfully requests that the Court set the hearing on this Motion as soon as

21   possible on whatever notice the Court may direct, but no later than May 22, 2013,

22   pursuant to the accompanying *Ex Parte Application for Order Shortening Time for and*

23   *Setting Hearing on the Debtor's Emergency First Day Motions*. New Meatco has already

24   served a courtesy copy of this Motion on the U.S. Trustee, its secured lenders, and its 20

25   largest unsecured creditors by overnight mail.

26        **WHEREFORE**, New Meatco respectfully requests that the Court: (1) enter the

27   Interim Order approving the Postpetition Financing on the terms set forth in the

28   Postpetition Loan Agreement; (2) schedule a final hearing on the Motion and approve the

1   form and scope of notice of that hearing; (3) following the final hearing, enter the Final

2   Order approving the Postpetition Financing; and (4) grant New Meatco such other and

3   further relief as may be just and proper.

4   Dated:   May __, 2013           Respectfully submitted,

5

6                                 **ARENT FOX LLP**

7                                 By: _/s/ Mette H. Kurth_

8                                 Mette H. Kurth
                                     _Proposed_ Bankruptcy Counsel for Debtor

9                                 and Debtor-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    Company Overview

Headquartered in Los Angeles, California, New Meatco is an importer and distributor of refrigerated and frozen protein products to approximately 2,000 Hispanic grocery stores and bodegas in Southern and Central California. Its products include meat, poultry and seafood, with its seafood offerings being marketed under the name King Seafood. New Meatco operated out of a 191,270 square foot, leased facility located just south of downtown LA.

### B.    Events Leading to this Chapter 11 Filing

New Meatco was established on or about March 11, 2011. In 2011, the company had positive EBITDA of $1.949 million. By 2012, its EBITDA had declined to *negative* $5.495 million, primarily due to rapid, across-the-board increases in operating expenses. In April 2012, New Meatco began to struggle to meet certain covenants under its secured loan agreements. New Meatco entered into numerous amendments and forbearance agreements with its secured lenders in an effort to enable it to address its liquidity and business concerns. Performance, however, continued to decline.

In or about November 2012, New Meatco again defaulted on its secured loan obligations by failing to meet certain covenants, including failing to satisfy the minimum required EBITDA. New Meatco entered into various amendments and forbearance agreements with its lenders while it began seeking a financial advisor to provide assistance. In November of 2012, New Meatco retained Scouler to conduct a preliminary assessment of its financial condition and alternatives and to provide the company with financial advisory services. On January 2, 2013, Dan Scouler was appointed as New Meatco's CRO.

Scouler initially focused its efforts on attempting to stem the company's losses while it worked to secure a going concern sale of the business. Although Scouler

1    identified a potential buyer for New Meatco, the company continued to encounter severe

2    liquidity challenges due to declining performance, growth in bad debts, extended terms to

3    consumers, and mounting trade debt.    In March of 2013, Seafax—a leading credit

4    reporting and collection agency for the North American food industry—downgraded New

5    Meatco's credit rating from "inconclusive" to "cautionary" status.    Seafax attributed its

6    action to supplier reports of increasing difficulty collecting payments within terms

7    coupled with a lack of information about the company.    Following this downgrade, New

8    Meatco's major suppliers stopped further shipments of inventory.    Without weekly

9    shipments of fresh meat, poultry, and seafood, New Meatco was unable to continue

10    operations and was forced to abandon its going-concern sale efforts.

11           On April 19, 2013, New Meatco and Wells Fargo entered into a *Forbearance and*

12    *Post Default Funding Agreement* and *Postpetition Financing/Cash Collateral Use*

13    *Consent Terms*.    These agreements provided limited financing to enable New Meatco to

14    develop a strategy for maximizing the value of its remaining assets.    After exploring all

15    options, New Meatco determined that the best means of maximizing value for its

16    stakeholders would be to terminate its operations and sell its assets to the highest available

17    bidder, followed by an orderly disposition of its affairs.

18           Because New Meatco's inventory consists of fresh protein products that must be

19    sold or frozen before their "pull date," time was of the essence.    After conducting a

20    process designed to maximize the value of its assets and recoveries for creditors within the

21    limited time available, New Meatco agreed to sell its inventory through a series of sales to

22    Harvest Meat Company, Inc. ("Harvest").    Harvest also purchased New Meatco's

23    remaining accounts receivable.    Pursuant to the terms of the sale, Harvest will receive a

24    fee for collection of the accounts receivable, and it will remit substantially all of the

25    amounts collected to Wells Fargo to be applied against outstanding amounts due under

26    New Meatco's prepetition credit facility with Wells Fargo, thus reducing Wells Fargo's

27    claims against the estate. New Meatco's CRO received no better offers for New Meatco's

28    inventory, and he determined that accounts receivable could not be liquidated for a lower

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

LA/1422411.1

1  cost than what was offered to New Meatco under Harvest's proposal.  New Meatco

2  therefore concluded that the sales of the inventory and accounts receivable to Harvest

3  represented the highest available purchase price and constituted fair value for these assets.

4  The sales closed during late April 2013, with the final sale closing on or about April 30,

5  2013.

6       While Scouler was negotiating the sale to Harvest, New Meatco and its Lenders

7  were also discussing the preservation of the company's remaining assets and the most

8  cost-effective method for concluding its business affairs.  After considering all options,

9  New Meatco has determined that its assets can best be preserved and its value maximized

10  for creditors by filing a bankruptcy case for the purpose of monetizing valuable avoidance

11  actions and other litigation assets.  The company carefully compared the relative

12  advantages and disadvantages of a Chapter 7 filing versus a Chapter 11 filing, and it

13  discussed its options at length with its Lenders.  New Meatco and its Lenders concluded

14  that, given the significant work that New Meatco's CRO and professionals have already

15  conducted to identify, preserve and pursue avoidance actions and other litigation assets,

16  the current team of professionals can most rapidly and cost effectively monetize these

17  assets for the benefit of all of New Meatco's creditors without the delay, duplication, and

18  uncertainty that would come from a Chapter 7 filing.

19  **C.   New Meatco's Goals for This Chapter 11 Case**

20       New Meatco has commenced this Chapter 11 case with the support of its principal

21  creditors, Wells Fargo (owed approximately $3.9 million on a senior, secured basis), and

22  the Agent for the Second Lien Lenders (owed approximately $12.8 million).  This support

23  is evidenced by Wells Fargo's willingness to provide Postpetition Financing to New Meatco

24  in the amount of $219,295.00, and the consent of the Agent to this financing.   The

25  Postpetition Financing is being provided as bridge financing to enable New Meatco to

26  fund its operations in Chapter 11 until it starts to see the benefits of monetizing these

27  avoidance actions.   The terms of the Postpetition Financing are set forth in the

28  Postpetition Loan Agreement attached to the accompanying Scouler Declaration as

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

LA/1422411.1

**Exhibit 1.**  This financing is being made available to New Meatco only in the context of a Chapter 11 case and for the purpose of enabling New Meatco's CRO and professionals to see through the wind down of New Meatco and the preservation of its litigation assets.  A Chapter 7 filing and the needless transition to a new set of professionals would have threatened the loss of the experience and knowledge base represented by New Meatco's CRO and his team, as well as the loss of the funding currently being provided by Wells Fargo.

To ensure that this Chapter 11 case proceeds efficiently and rapidly, New Meatco's CRO and its professionals have already conducted a thorough analysis of the company's avoidance actions, preserved the records and files needed to prosecute these actions, and arranged for the retention of key employees needed to support this endeavor.  They are in the process of sending out demand letters to the recipients of potentially avoidable transfers and payments.  They have also identified key commercial tort claims, preserved the records, files, and personnel needed to prosecute these claims, and they are negotiating financing for the prosecution of these claims.

To create transparency for all creditors, New Meatco's professionals are preparing to promptly file a Chapter 11 plan establishing a creditor's trust for the purpose of investigating and resolving claims against the estate and liquidating the litigation assets and any other remnant assets in New Meatco's estate.  The key feature of the plan will be the creation of a liquidating trust that will consist of any unencumbered assets of New Meatco's estate, principally litigation assets and avoidance actions (subject to Wells Fargo's interests in avoidance recoveries pursuant to the Postpetition Financing).  New Meatco's CRO and professionals have already conducted significant due diligence to identify the key litigation assets and avoidance actions to be preserved and pursued under this liquidating trust, and they are prepared to move forward immediately to protect and liquidate these assets for the benefit of New Meatco's creditors.  The Lenders have been actively involved with New Meatco's CRO and professionals as they have taken steps to preserve asset value, and the creation of a creditor's trust adopted following solicitation

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

LA/1422411.1

1    and voting on a Chapter 11 plan gives the Lenders and other interested creditors a better

2    opportunity for involvement and oversight of liquidation efforts than does a Chapter 7

3    filing.

4        Under the circumstances, New Meatco and its Lenders believe that New Meatco's

5    estate and creditors will be best served by approving the Postpetiton Financing and

6    pursing New Meatco's liquidating plan and the swift creation of a creditor's trust.

7    **D.**    **New Meatco's Balance Sheet**

8        **1.**    **Corporate Ownership**

9        Meatco Acquisition Company, LLC ("Acquisition Co.") holds 80.1% of the equity

10    interests in New Meatco.  Meatco Provisions, Inc. ("Old Meatco") holds the other 19.1%

11    of the equity interests in New Meatco.  New Meatco's Chief Executive Officer, Marod

12    Harrouni, holds 100% of the equity interests of Old Meatco.

13        **2.**    **The Company's Assets**

14        Based on New Meatco's books and records, as of May 8, 2013, New Meatco's

15    unaudited balance-sheet assets totaled approximately $116,000.  Of this amount, New

16    Meatco held, on a book value basis, property and equipment totaling approximately

17    $43,000; prepaid expenses of $70,000; $3,000 in cash; and miscellaneous contingent,

18    unliquidated assets consisting primarily of potential avoidance actions pertaining to

19    approximately $45 million in payments made to vendors during the preference period and

20    potential commercial tort claims of undetermined value.

21        **3.**    **The Company's Liabilities**

22        Based on its books and records, as of May 8, 2013, New Meatco's unaudited,

23    balance-sheet liabilities totaled approximately $39.6 million.  This amount includes: $3.9

24    million outstanding under its secured prepetition credit facility and other agreements

25    owing to Wells Fargo; $12.8 million in principal owing to the Second Lien Lenders;

26    approximately $16 million in trade debts; $5.2 million owing to Old Meatco; $1.2 million

27    owing to  insider Marod Harrouni; and $482,000 in accrued expenses and other current

28    liabilities.

***The Wells Fargo Credit Facility.*** New Meatco and Wells Fargo are parties to a *Credit and Security Agreement dated April 18, 2011* (as amended, the "Senior Loan Agreement"). The Senior Loan Agreement was established for working capital purposes, to pay a portion of New Meatco's obligations related to its acquisition of Old Meatco in 2011, and to facilitate the issuance of letters of credit. Pursuant to the Senior Loan Agreement, Wells Fargo holds a security interest in substantially all of the assets of New Meatco, including New Meatco's inventory, its accounts receivable and deposit accounts, investment property, and certain other assets (the "Collateral") and proceeds of the Collateral. The Senior Loan agreement provides that New Meatco shall grant to Wells Fargo a security interest in all commercial tort claims "following request by Wells Fargo." To New Meatco's knowledge, no such request was made by Wells Fargo prior to the commencement of this case.

Pursuant to the Senior Loan Agreement, Wells Fargo provided the company with a $25 million line of credit and a $3 million term loan (the "Prepetition Financing"). On February 6, 2013, New Meatco and Wells Fargo entered into a *Second Amendment to the Senior Loan Agreement* whereby Wells Fargo increased the credit line to $26.667 million and advanced $1,583,333.39 to repay all outstanding amounts under the term loan. As of May 8, 2013, the obligations owed by New Meatco to Wells Fargo under the Senior Loan Agreement were approximately $3,948,884.93.

***The Second Lien Loan.*** Pursuant to a *Second Lien Senior Secured Loan and Guaranty Agreement dated as of April 19, 2011* (as amended, the "Junior Loan Agreement"), the Second Lien Lenders hold a security interest in substantially all of New Meatco's Assets—including all commercial tort claims—which interests are junior to any security interests of Wells Fargo. Wilmington Trust, N.A. currently serves as the administrative agent under the Junior Loan Agreement. In connection with the Junior Loan Agreement, the Second Lien Lenders entered into certain Guaranty and Collateral Agreements with Old Meatco and Acquisitions Co. secured by a security interest in various assets of Old Meatco and Acquisitions Co., including their equity interests and

1    stock rights in New Meatco.

2    Under the Junior Loan Agreement, New Meatco borrowed approximately $13

3    million in the aggregate. The loan matures on April 18, 2016. As of March 31, 2013, the

4    obligations owed by New Meatco to the Second Lien Lenders under the Junior Loan

5    Agreement were approximately $12,823,513.00.

6    **E.    The Immediate Need for Financing**

7    As a result of the abrupt termination of its trade credit, New Meatco was left with

8    insufficient liquidity under its revolving credit facility to fund ongoing obligations in the

9    ordinary course of business. New Meatco has only approximately $3,000 in cash on hand.

10    Without ongoing operations, New Meatco cannot operate in reliance on its cash collateral.

11    It requires immediate postpetition financing to continue the orderly disposition of its

12    affairs, preserve the value of its assets, and quickly effectuate a chapter 11 plan that will

13    establish a liquidating trust for the benefit of its creditors.

14    New Meatco therefore approached Wells Fargo about providing financing for its

15    Chapter 11 case. The Postpetition Financing was negotiated over the last four weeks.

16    Wells Fargo is not affiliated with New Meatco. The negotiations were conducted at arms'

17    length and in good faith, with all parties represented by experienced counsel. At all times,

18    New Meatco has sought to protect the interests of the company and to maximize its value

19    for creditors, and it believes that the Postpetition Financing represents the best overall

20    agreement that it could negotiate and that is available under the circumstances.

21    Wells Fargo has agreed to provide the Postpetition Financing in support of New

22    Meatco's Chapter 11 case and in furtherance of its efforts to establish a creditor's trust

23    with the support of, and for the benefit of, its creditors. The Postpetition Financing

24    addresses New Meatco's liquidity needs and will allow New Meatco the bridge financing

25    needed to fund administrative costs of this estate until New Meatco begins collecting cash

26    through the prosecution of avoidance actions.

27    After consulting with its legal and financial advisors, New Meatco believes that it

28    would be extremely difficult, if not impossible, to obtain financing for a liquidating

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

LA/1422411.1

1    Chapter 11 plan from anyone other than its existing lender.  New Meatco believes that the

2    available financing represents its only real opportunity to meet its various and urgent

3    financing needs and maximize the value of its remaining assets for the benefit of its

4    creditors.

5    **F.**    **The Postpetition Financing and Summary of the Terms Contained in the**

6    **Postpetition Loan.**

7    The terms of the Postpetition Financing are summarized briefly here and are set

8    forth in detail in the Postpetition Loan Agreement and the proposed Interim Order.  Under

9    the Postpetition Loan Agreement, New Meatco will obtain from Wells Fargo a maximum

10    credit line of up to $219,295.00.  Availability under the Postpetition Financing would be

11    limited to amounts set forth in the budget (the "Budget") attached to the Postpetition Loan

12    Agreement.  The Postpetition Financing will permit New Meatco to use the proceeds of

13    that financing to pay the costs of administering this Chapter 11 case to the extent set forth

14    in the Budget, to pay amounts owing to Wells Fargo under the Postpetition Financing, and

15    prior to an event of default, to pay fees and expenses of professionals retained by New

16    Meatco or any official committee of unsecured creditors (subject to the budget and to the

17    extent such professional fees and expenses are approved by final order of the Bankruptcy

18    Court).  The Postpetition Financing will mature on the earlier of June 15, 2013 or a default

19    under the Postpetition Financing.  Interest will be calculated at the same rates as set forth

20    under the Senior Loan Agreement and existing as of the Petition Date.  New Meatco will

21    pay Wells Fargo a closing fee of 2.00% of the total amount of the commitments under the

22    Postpetition Financing.

23    In exchange for providing financing under the Postpetition Financing, Wells Fargo

24    will receive: (1) a priming, first-priority perfected lien, granted by New Meatco and

25    approved by the Bankruptcy Court pursuant to Bankruptcy Code sections 364(c)(2) and

26    364(d) on (a) all current assets of New Meatco, and (b) all assets arising after the Petition

27    Date, including any causes of action and recovery under Bankruptcy Code sections 547,

28    548, and 548—solely for post-petition advances—and all proceeds thereof (the

1    "Postpetition Collateral"). The Postpetition Collateral will be free and clear of other liens,

2    claims, and encumbrances. Wells Fargo's liens under the Senior Loan Agreement will

3    secure the repayment of New Meatco's obligations under the Postpetition Financing.

4    Wells Fargo will also have claims for the repayment of all obligations under the

5    Postpetition Financing and such claims will be entitled to administrative super-priority

6    status under Bankruptcy Code section 364(c)(1). On account of its claims under the

7    Senior Loan Agreement, Wells Fargo will receive as and for adequate protection a

8    replacement lien on the Collateral to secure claims for any diminution in the value of its

9    interest in the Collateral.

10    The Postpetition Loan Agreement also calls for New Meatco to adhere to a cash

11    management arrangement acceptable to the United States Trustee or otherwise approved

12    by the Court. New Meatco maintains only two depository accounts, an operating account

13    and a payroll account. Both are maintained at Wells Fargo. Under the proposed cash

14    management arrangement, these two accounts will continue to be maintained at Wells

15    Fargo, an approved depository of the United States Trustee, as debtor-in-possession

16    accounts. Rather than formally closing and re-opening the two accounts, New Meatco has

17    provided Wells Fargo with a list of all outstanding, prepetition checks that were issued

18    against these accounts, and Wells Fargo has stopped payment on all such prepetition

19    checks.

20    **G.    Adequate Protection for the Second Lien Lenders**

21    New Meatco provided copies of the Postepetition Loan Agreement and the Interim

22    Order to the Agent for the Second Lien Lenders prior to filing this Motion. The Agent

23    objected to the Postpetition Financing to the extent that New Meatco proposes to provide

24    a priming lien to Wells Fargo without providing adequate protection to the Second Lien

25    Lenders. New Meatco and the Agent have engaged in significant discussions about this

26    issue, particularly in light of the fact that the Second Lien Lenders are both structurally

27    junior to Wells Fargo and party to an intercreditor agreement pursuant to which their

28    claims have been subordinated to Wells Fargo. However, the Agent has been steadfast in

1  its position that it will object to the proposed Postpetition Financing unless the Second

2  Lien Lenders are provided with adequate protection against any diminution in the value of

3  their collateral on account of the Postpetition Financing in the form of replacement liens, a

4  surcharge waiver, and the creation of lien-challenge deadlines similar to those provided

5  for Wells Fargo under the Postpetition Financing.

6       New Meatco believes that the possibility of any diminution in the value of the

7  Second Lien Lenders' collateral on account of the Postpetition Financing is remote.

8  However, given the estate's dire lack of liquidity it is seeking to minimize administrative

9  costs and professional fees and to move this case forward as rapidly as possible.

10  Accordingly, in order to secure the Second Lien Lenders' consent to the Postpetiton

11  Financing and to avoid the expense and potential delay and uncertainty associated with a

12  contested hearing, New Meatco has agreed to incorporate language substantially along the

13  lines of the redlined language contained in the Interim Order.  This language was first

14  proposed on May 17, 2013, shortly before the filing of this motion, and it therefore

15  remains subject to further review and modification.

16  **H.    Local Rule 4001-2 Disclosures.**

17       Local Rule 4001-2 requires that New Meatco highlight certain "extraordinary"

18  provisions contained within the Postpetition Loan Agreement or the Interim or Final

19  Orders being requested in connection with the Motion.  These provisions are identified in

20  Form F 4001-2, which is attached hereto as **Exhibit 2**.  Wells Fargo would not have

21  agreed to provide financing to the New Meatco absent these provisions.

22                                **II.**

23                            **ARGUMENT**

24  **A.    Emergency Consideration of this Motion is Appropriate**

25       Bankruptcy Rule 4001(c) governs the consideration of post-petition financing

26  motions.  Subsection (c)(2) provides for expedited consideration "to the extent necessary

27  to avoid immediate and irreparable harm to the estate pending a final hearing."[3]  Local

---

[3]  *See* Fed. R. Bankr. P. 4001(c)(2).

1    Bankruptcy Rule 2081-1(a)(9) also provides for an expedited consideration of the Motion.

2         The Postpetition Financing is needed to pay New Meatco's essential operating

3    expenses. If New Meatco is not authorized to obtain financing under the Postpetition

4    Financing and the Postpetition Loan Agreement on an interim and final basis, New

5    Meatco will be unable to continue to make payments to employees when due which will

6    inhibit the company's ability to maximize value as it winds down.

7    **B.    Approving the Postpetition Loan Agreement Is Appropriate.**

8         As a debtor in possession, New Meatco is authorized to operate its business under

9    Bankruptcy Code section 1108. As part of that operation, New Meatco may incur

10   unsecured debt in the ordinary course of business.[4] The Bankruptcy Code offers a debtor

11   in possession additional flexibility to the extent it needs additional credit, but cannot

12   attract such credit on unsecured terms. Section 364 provides a progression of various

13   protections to induce a post-petition lender to extend credit to a debtor in possession.

14        To justify a post-petition credit on "super-priority" basis or by granting a priming

15   lien, a debtor must show that it is unable to obtain the necessary credit otherwise and the

16   lienholder to be primed (to the extent that such priming is not consensual) is adequately

17   protected. Section 364, however, does not impose upon a debtor in possession the

18   onerous duty to seek credit from every possible lender before concluding that such credit

19   is available.[5] Instead, a good faith effort to obtain less burdensome credit from other

20   sources is all that is required of a debtor, especially when time is of the essence.[6]

21        Wells Fargo is the only lender who is likely to make a working capital loan to

22   finance New Meatco's liquidating Chapter 11 case, and it is certainly the only one able to

23   do so in the short time available to the company. New Meatco does not have sufficient

24   sources of capital to fund the costs of this Chapter 11 case without the Postpetition

25   _____

[4]   *See* 11 U.S.C. § 364(a).

26   [5]   *See Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088
     (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)
27   (holding that contacting four financial institutions regarding a loan satisfied the requirements
     of § 364(d)(1)(A)).

28   [6]   *See, e.g., In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987); *In re Stacy
     Farms*, 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987).

1    Financing. New Meatco believes that the available financing represents its only real

2    opportunity to meet its the various and urgent financing needs and maximize the value of

3    its remaining assets for the benefit of its creditors. The terms and conditions of the

4    proposed Postpetition Financing are fair and reasonable under the circumstances.

5        **A.**    **New Meatco Has Satisfied the Requirements Under Bankruptcy Code §**

6        **364(c) and Should Be Allowed to Borrow on a "Super-priority" and**

7        **Senior Secured Basis**

8        The Postpetition Loan Agreement provides Wells Fargo with the following

9    protections:

10           a.    Wells Fargo will also have claims for the repayment of all

11   obligations under the Postpetition Financing and such claims will be entitled to

12   administrative super-priority under Bankruptcy Code section 364(c)(1), subject to a

13   $114,500 carve-out for allowed professional fees; and

14           b.    A priming, first-priority perfected lien: on (1) all current assets

15   of New Meatco; and (2) all assets arising after the Petition Date, including any

16   causes of action and recovery under Bankruptcy Code sections 547, 548, and 548,

17   solely for post-petition advances, and all proceeds thereof, subject to a $114,500

18   carve-out for allowed professional fees.

19       Other than the requirement of "notice and a hearing," the only statutory

20   prerequisite for obtaining secured credit on a "super-priority" basis under Section

21   364(c)(1)-(3) is that "the [debtor in possession] is unable to obtain unsecured credit

22   allowable under § 503(b)(1) of this title as an administrative expense." This threshold test

23   is satisfied here.

24       Despite its efforts, New Meatco has been unable to obtain unsecured credit from

25   Wells Fargo except on the terms set forth under the Postpetition Financing. Moreover, it

26   will be extremely unlikely, if not impossible, for New Meatco to obtain financing for this

27   liquidation Chapter 11 case from anyone other than Wells Fargo, its existing lender.

28   Consequently, New Meatco should be permitted to borrow from Wells Fargo on a "super-

1    priority," senior secured, and junior secured basis under § 364(c)(1)-(3), as such

2    borrowing is the only source of funds available to the company at this time.

3    **B.    New Meatco Has Satisfied the Requirements of Bankruptcy Code §**

4    **364(d)**

5    The only statutory prerequisites for obtaining credit on a priming lien basis under

6    §364(d) are that "the [debtor in possession] is unable to obtain such credit otherwise" and

7    that, absent the consent of the secured creditor sought to be primed, "there is adequate

8    protection of the interest of the holder of the lien on the property of the estate on which

9    such senior or equal lien is proposed to be granted." Each of these tests is satisfied in this

10    case.

11    As set forth above, New Meatco simply cannot obtain alternative financing on an

12    unsecured basis. The company otherwise does not have unencumbered sources of cash to

13    fund the expenses of this Chapter 11 case. Wells Fargo has refused to extend credit post-

14    petition without the "super-priority" and the "priming" protections afforded by Sections

15    364(c)(1) and (d), and New Meatco has been unable to obtain financing on any other

16    feasible and more favorable terms.

17    **C.    The Postpetition Financing Is Supported by the Exercise of Sound**

18    **Business Judgment and Good Faith**

19    The fact that New Meatco has satisfied the requirements of Bankruptcy Code

20    section 364, of course, does not end the inquiry, as these sections are permissive, not

21    mandatory. *See* 11 U.S.C. § 364(c) and (d)(1) (*"after notice and a hearing"*, the court

22    "*may* authorize the obtaining of credit or the incurring of debt") (emphasis added).

23    Generally, however, courts give broad deference to business decisions of a debtor in

24    possession.[7] Moreover, a bankruptcy court generally will respect a debtor in possession's

25    business judgment regarding the need for and the proposed use of funds. As the court

26    noted in *In re Ames Department Stores, Inc.*,

27
_____

28    [7]    *See Resolution Trust Corp. v. Official Unsecured Creditors Comm. (In re Defender Drug Stores, Inc.)*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992); *Richmond Leasing v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

> [T]he court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.[8]

The power of the debtor in possession to incur secured debt follows necessarily from the general power of the debtor in possession to operate its business in the exercise of its business judgment pursuant to section 1108 of the Bankruptcy Code. Without the ability to incur secured debt, the debtor in possession would be placed at a significant competitive disadvantage and its efforts to reorganize could be seriously impaired.

In the present case, New Meatco's decision to enter into the Postpetition Loan Agreement represents an exercise of sound business judgment in the continued preservation its value for the benefit of its estate and creditors. Moreover, the terms of the proposed transaction are fair, reasonable, and adequate given the circumstances. Like most business decisions, New Meatco's decision to enter into the Postpetition Loan Agreement will both confer a number of benefits on the company and impose several tradeoffs. The Postpetition Financing should provide New Meatco with sufficient capital to fund its Chapter 11 case pending formulation and confirmation of a Chapter 11 plan. Wells Fargo has also agreed to fund certain statutory fees, professional fees, and other necessary expenses pursuant to the Budget. Further, the terms of the Postpetition Financing have been negotiated in good faith and at arms' length by and between the parties, with all parties represented by counsel. Any credit extended under the Postpetition Financing should be held to qualify as having been extended in good faith by Wells Fargo as that term is used in section 364(e) of the Bankruptcy Code.

The concessions that New Meatco has made in exchange for the Postpetition Financing are common in complex financing arrangements and are amply justified here in light of the benefits conferred upon the company under the Postpetition Financing and the

---

[8] 115 B.R. at 40.

1   absence of any other likely financing.  In fact, bankruptcy courts routinely recognize that

2   concessions by debtors similar (or even greater) to those made here are often included in

3   both debtor-in-possession financing and cash collateral arrangements.[9]

4     In sum, the benefits New Meatco will derive from the proposed financing amply

5   justify the company's decision to enter into the Postpetition Loan Agreement, a decision

6   that the Court should approve as being in the best interests of New Meatco's estate and

7   creditors.

8   **III.**

9   **REQUEST FOR FINAL HEARING**

10     Pursuant to Bankruptcy Rule 4001(c), New Meatco respectfully requests that the

11   Court schedule a Final Hearing no later than 20 days from the date that the Court enters

12   the Interim Order.  New Meatco's request for interim approval of the Postpetition Loan

13   Agreement is intended to provide an amount of cash sufficient to permit the company to

14   continue to operate during the near term.  Accordingly, in order to maintain its operations

15   in Chapter 11, the company will need prompt final approval of the Postpetition Loan

16   Agreement.

17     New Meatco requests that it be permitted to serve notice of the Motion, the Interim

18   Order, and the final hearing by facsimile, overnight mail, or U.S. mail to: (a) the United

19   States Trustee; (b) counsel for its secured lenders, (c) its 20 largest unsecured creditors as

20   set forth in the list filed by the company pursuant to Bankruptcy Rule 1007(d), (d) all

21   parties in interest on whom service is required by any order limiting notice entered in this

22   case, (e) all other known holders of liens on the company's assets, and (f) on the

23   applicable state and local taxing agencies.  New Meatco requests that the Court determine

24
25
26
27
28

---

[9]   *See, e.g., Burchinal v. Cent. Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1488 (9th Cir. 1987) ("[S]ection 364 was designed to provide a debtor a means to obtain credit after filing bankruptcy.  As such, cross-collateralization clauses appear to be covered by section 364 . . . ."); *In re Keystone Camera Prods. Corp.*, 126 B.R. 177, 182-83 (Bankr. D.N.J. 1991); *In re Stein & Day, Inc.*, 87 B.R. 290, 292 (Bankr. S.D.N.Y. 1988) (providing for payment of prepetition debt); *Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 364 (W.D. Mich. 1986), *aff'd*, 834 F.2d 599, 602, 605 (6th Cir.1987) ("Cross-collateralization . . . although controversial, is often used, and even the courts that discourage it have approved its use."); *In re FCX, Inc.*, 54 B.R. 833, 840 (Bankr. E.D.N.C. 1985) (approving cross-collateralization).

1    such notice to be good and sufficient notice of the final hearing under Bankruptcy Rule

2    4001.  New Meatco also requests that such notice of approval of the Interim Order shall

3    state that any party in interest objecting to the Postpetition Financing or the terms of the

4    Final Order shall file written objections with the Court no later than 14 calendar days prior

5    to the final hearing, or such other period as the Court shall direct.

6                                              **IV.**

7                          **WAIVER OF BANKRUPTCY RULE 6004(h)**

8            New Meatco further seeks a waiver of any stay of the effectiveness of the Interim

9    Order.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or

10   lease of property other than cash collateral is stayed until the expiration of 14 days after

11   entry of the order, unless the court orders otherwise." As set forth above, authorizing the

12   Postpetition Financing on an interim basis is necessary because New Meatco does not

13   have enough working capital to fund the expenses of this Chapter 11 case, and the interim

14   financing will preserve the value of New Meatco for the benefit of its estate and creditors

15   in the very near term.  Accordingly, New Meatco submits that ample cause exists to

16   justify a waiver of the 14 day stay imposed by Bankruptcy Rule 6004(h), to the extent it

17   applies.

18                                              **V.**

19                                       **CONCLUSION**

20           For the reasons set forth herein, New Meatco respectfully requests that the Court

21   (1) enter the Interim Order approving the Postpetition Financing on the terms set forth in

22   the  Postpetition  Loan  Agreement,  including  the  cash  management  arrangement;

23   (2) schedule a final hearing on the Motion and approve the form and scope of notice of

24   that  hearing;  (3)  following  the  final  hearing,  enter  the  Final  Order  approving  the

25

26

27

28

1  Postpetition Financing; and (4) grant New Meatco such other and further relief as may be

2  just and proper.

3

4

5  Dated: May 17, 2013                         Respectfully submitted,

6                                              **ARENT FOX LLP**

7

8                                              By: */s/ Mette H. Kurth*

9                                                  Mette H. Kurth
                                                   *Proposed* Bankruptcy Counsel for
                                                   Debtor and Debtor-in-Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1   Mette H. Kurth (SBN: 187100)
    Beth Brownstein (*pro hoc vice pending*)
2   **ARENT FOX LLP**
    555 West Fifth Street, 48th Floor
3   Los Angeles, CA 90013-1065
    Telephone:    213.629.7400
4   Facsimile:    213.629.7401
    Email:    mette.kurth@arentfox.com
5   Email:    beth.brownstein@arentfox.com

6   [Proposed] Attorneys for Debtor

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                          **LOS ANGELES DIVISION**

11   In re                                    ) Case No. 2:13-bk-22155 RN
                                              )
12   NEW MEATCO PROVISIONS, LLC,              ) Chapter 11
                                              )
13                                            ) **INTERIM ORDER ON MOTION**
                          Debtor in Possession ) **(A) AUTHORIZING POSTPETITION**
14                                            ) **FINANCING, (B) GRANTING SECURITY**
                                              ) **INTERESTS AND SUPER PRIORITY**
15                                            ) **ADMINISTRATIVE EXPENSE STATUS;**
                                              ) **(C) MODIFYING THE AUTOMATIC**
16                                            ) **STAY; (D) GRANTING ADEQUATE**
                                              ) **PROTECTION; AND (E) SCHEDULING A**
17                                            ) **FINAL HEARING**
                                              )
18                                            ) Date:    _____, 2013
                                              ) Time:    _____ a.m.
19                                            ) Place:    Courtroom 1645
                                              )          255 E. Temple Street
20                                            )          Los Angeles, CA 90012
                                              )
21   _____ )

22       On May ___, 2013, a hearing (the "*Interim Hearing*") was held before this Court, the

23   Honorable Richard M. Neiter presiding, regarding the Motion (A) Authorizing Postpetition

24   Financing; (B) Granting Security Interests and Super Priority Administrative Expense Status;

25   (C) Modifying the Automatic Stay; (D) Granting Adequate Protection; and (E) Scheduling a Final

26   Hearing (the "*Motion*"), by New Meatco Provisions, LLC, the debtor ("*Debtor*") in the above-

27   captioned bankruptcy case (the "*Case*").

28

Upon the record made by Debtor before and at the Interim Hearing, including the Motion and the pleadings and papers filed with the Court relating to the Case, and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.    <u>Petition</u>.  On May 8, 2013 (the "*Petition Date*"), Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*")[1] commencing the Case.  Debtor continues to operate its business and manage its assets as a "debtor in possession" pursuant to Bankruptcy Code sections 1107(a) and 1108.

B.    <u>Jurisdiction, Venue</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Notice</u>.  Under the circumstances, the notice of the Motion and the Interim Hearing constitutes due, sufficient and appropriate notice thereof and complies with Bankruptcy Code section 102(1), Bankruptcy Rule 2002 and 4001(b), and the local rules of the Court.

D.    No official committee of unsecured creditors (upon the appointment thereof, the "*Committee*"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Case as of the date of the Interim Hearing.

E.    <u>Prepetition Obligations and Liens</u>.  Without prejudice to the rights of any other party (but subject to the limitations in Section 5.1 of Order), Debtor admits, stipulates and agrees as follows:

1.    <u>Lender Prepetition Loan Agreements.</u>

a.    ~~1.~~ ~~Prepetition Loan Agreement.~~ <u>Lender Prepetition Loan Amount.</u> Prior to the Petition Date, Debtor and Wells Fargo Bank, N.A. ("*Lender*") were parties to that certain Credit and Security Agreement, dated as of April 18, 2011 (as amended, modified,

---

[1] Statutory references herein are to the Bankruptcy Code unless otherwise noted.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  supplemented and restated, as of the Petition Date, the "*Prepetition Loan Agreement*") and other

2  related documents (as each amended, modified, supplemented and restated, as of the Petition

3  Date, collectively and together with the Prepetition Loan Agreement, the "*Prepetition Loan*

4  *Documents*").  ~~In addition, Lender and Wilming Trust _____, as successor to Prospect~~

5  ~~Capital Corporation ("*Second Lien Lender*") are parties to that certain Intercreditor and~~

6  ~~Subordination Agreement, dated as of April 18, 2011 (as amended, modified, supplemented and~~

7  ~~restated, the "*ICA*") with respect to the claims and liens asserted by Lender and Second Lien~~

8  ~~Lender with respect to the Debtor and the Collateral.~~

9          b.      Second Lien Prepetition Loan Amount.  Prior to the Petition Date,

10  Debtor and the predecessor to certain second lien lenders ("*Second Lien Lenders*") and

11  Wilmington Trust, N.A., as agent for the Second Lien Lenders ("*Second Lien Agent*") were

12  parties to that certain Second Lien Senior Secured Loan and Guaranty Agreement, dated as of

13  April 19, 2011 (as amended, modified, supplemented and restated, as of the Petition Date, the

14  "*Second Lien Prepetition Loan Agreement*").

15          c.      ICA.  In addition, Lender and Second Lien Agent, on behalf of

16  Second Lien Lenders, as successor in interest, are parties to that certain Intercreditor and

17  Subordination Agreement, dated as of April 18, 2011 (as amended, modified, supplemented and

18  restated, the "*ICA*") with respect to the claims and liens asserted by Lender and Second Lien

19  Agent, on behalf of Second Lien Lenders, with respect to Debtor, the Collateral (as defined

20  herein) and the Secured Lien Collateral (as defined herein).

21          2.      Prepetition Obligations.

22          a.      ~~2.~~Lender Prepetition Obligations.  As of the Petition Date, Debtor

23  was obligated to Lender for the obligations arising under or relating to the Prepetition Loan

24  Documents (the "*Prepetition Obligations*").  The Prepetition Obligations (a) included

25  indebtedness in the aggregate principal amount of not less than $3,941,012.68 and accrued

26  interest in the amount of not less than $7,253.25, plus additional interest, costs, fees and charges

27  recoverable under the documents or by law, (b) constitute legal, valid, binding and enforceable

28  obligations of Debtor, and (c) are not subject to any objection, offset, avoidance, subordination or

1  other claim or challenge of any nature under the Bankruptcy Code, any other applicable law,

2  contract or otherwise.  The Prepetition Obligations are guaranteed by guarantors ("*Guarantors*")

3  pursuant to certain guaranty agreements (the "*Guaranties*")~~;~~.

4             b.  Second Lien Prepetition Obligations.  As of the Petition Date,

5  Debtor was obligated to the Second Lien Lenders for the obligations arising under or relating to

6  the Second Lien Prepetition Loan Agreement (the "*Second Lien Prepetition Obligations*").

7  Subject to section 5.1.2 of this Order, the Second Lien Prepetition Obligations (a) included

8  indebtedness in the aggregate principal amount of not less than $_____ and accrued interest

9  in the amount of not less than $_____, plus additional interest, costs, fees and charges

10  recoverable under the documents or by law, (b) constitute legal, valid, binding and enforceable

11  obligations of Debtor, and (c) are not subject to any objection, offset, avoidance, subordination or

12  other claim or challenge of any nature under the Bankruptcy Code, any other applicable law,

13  contract or otherwise.

14             3.  Prepetition Liens and Collateral.

15             a.  ~~3.Prepetition Liens and Collateral~~Lender Prepetition Liens.  As of

16  the Petition Date, the Prepetition Obligations were secured by certain liens and security interests

17  in favor of Lender (the "*Prepetition Liens*").  The Prepetition Liens (a) encumber all of Debtor's

18  right, title and interest in assets described in the Prepetition Loan Agreement and existing as of

19  the Petition Date (the "*Prepetition Collateral*"), (b) secure performance of the Prepetition

20  Obligations pursuant to the Prepetition Loan Documents, (c) constitute legal, valid, enforceable,

21  non-avoidable and duly perfected first and senior priority security interests and liens in and upon

22  the Prepetition Collateral in favor of Lender subject only to the Permitted Senior Liens (defined

23  herein), (d) are not subject to any objection, offset, avoidance, subordination or other claim or

24  challenge of any nature under the Bankruptcy Code, any other applicable law, contract or

25  otherwise, and (e) were granted by Debtor in its sound business judgment, for fair and sufficient

26  consideration and reasonably equivalent value, contemporaneously with the making of the loans

27  or commitments to make loans and other financial accommodations secured thereby.  The

28  Prepetition Collateral includes Cash Collateral (defined herein).

1    <u>b.</u>    <u>Second Lien Prepetition Liens.  As of the Petition Date, the Second</u>

2    <u>Lien Prepetition Obligations were secured by certain liens and security interests in favor of</u>

3    <u>Lender (the "*Second Lien Prepetition Liens*").  Subject to Section 5.1.2 of this Order, the Second</u>

4    <u>Lien Prepetition Liens (a) encumber all of Debtor's right, title and interest in assets described in</u>

5    <u>the Second Lien Prepetition Loan Agreement and existing as of the Petition Date (the "*Second*</u>

6    *<u>Lien Prepetition Collateral</u>*<u>"), (b) secure performance of the Second Lien Prepetition Obligations</u>

7    <u>pursuant to the Second Lien Prepetition Loan Agreement, (c) constitute legal, valid, enforceable,</u>

8    <u>non-avoidable and duly perfected first and senior priority security interests and liens in and upon</u>

9    <u>the Second Lien Prepetition Collateral in favor of Second Lien Agent (on behalf of Second Lien</u>

10    <u>Lenders) subject to the Prepetition Liens in favor of Lender and certain other permitted senior</u>

11    <u>liens as provided in the Second Lien Prepetition Loan Agreement, (d) are not subject to any</u>

12    <u>objection, offset, avoidance, subordination or other claim or challenge of any nature under the</u>

13    <u>Bankruptcy Code, any other applicable law, contract or otherwise, and (e) were granted by Debtor</u>

14    <u>in its sound business judgment, for fair and sufficient consideration and reasonably equivalent</u>

15    <u>value, contemporaneously with the making of the loans or commitments to make loans and other</u>

16    <u>financial accommodations secured thereby.  The Second Lien Prepetition Collateral includes</u>

17    <u>Cash Collateral (defined herein).</u>

18    4.    Prior to the Petition Date, certain Prepetition Collateral was sold for a

19    purchase price that is based upon the ultimate recovery of proceeds of such Prepetition Collateral

20    (the "*Pending Prepetition Collateral Proceeds*").  As of the Petition Date, the value of the

21    Prepetition Collateral (assuming recovery of the Pending Prepetition Collateral Proceeds) is equal

22    to or greater than the amount of the Prepetition Obligations.

23    5.    Debtor has no valid claims (as such term is defined in section 101(5)) or

24    causes of action against the Prepetition Lender with respect to any Prepetition Loan Documents,

25    whether arising at law or at equity, including, without limitation, any recharacterization,

26    subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or

27    542 through 553, inclusive, of the Bankruptcy Code.

28    F.    <u>Findings Supporting the Postpetition Financing.</u>

1.    <u>Postpetition Financing</u>.  Debtor has requested from Lender loans, advances and other financial accommodations on and after the Petition Date (the "*Postpetition Financing*") upon the findings of fact and conclusions of law made herein and upon the terms and conditions of:  (a) the Prepetition Loan Agreement, as amended by that certain Amendment Number Four to Loan and Security Agreement (DIP Financing), dated as of May 14, 2013,  a copy of which was attached to the Motion (as amended, the "*Postpetition Loan Agreement*"); (b) this Order; and (c) documents related thereto (collectively with the Postpetition Loan Agreement and this Order, the "*Postpetition Loan Documents*");

2.    <u>Need for Postpetition Financing</u>.  Debtor has an immediate need to obtain the Postpetition Financing in order to permit, among other tasks, the orderly conduct of its business affairs, the formulation of a chapter 11 plan and creation of a litigation trust for the benefit of its creditors,  and to manage and preserve the assets of its bankruptcy estate in the Case (the "*Estate*");

3.    <u>No Credit Available on Other Terms</u>.  Despite diligent efforts, Debtor is unable to procure the same amount of financing as contemplated in the Postpetition Financing; and

4.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  The terms of the Postpetition Financing are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession, reflect Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and have been negotiated in good faith and at arms' length by and between the parties.  Any credit extended under the terms of the Postpetition Loan Documents shall be extended in good faith by Lender as that term is used in section 364(e).

G.    <u>Adequate Protection.</u>

1.    <s>Adequate Protection</s><u>Cash Collateral</u>.  Debtor acknowledges and admits that the proceeds of the <u>Prepetition Collateral and the Second Lien</u> Prepetition Collateral (the "*Cash Collateral*") constitutes "cash collateral" of Lender within the meaning of section 363(a)<u>,</u>

<u>2.</u>    <s>G.</s>Lender Adequate Protection.  Lender is entitled to adequate protection of

1    its interests in the Prepetition Collateral pursuant to section 361 in connection with or resulting

2    from Debtor's use of the Cash Collateral, the Postpetition Financing and the imposition of the

3    automatic stay.  The adequate protection in favor of Lender as set forth in this Order (the

4    "*Adequate Protection*") and the use of the Cash Collateral as authorized by this Order are fair and

5    reasonable; provided, however, nothing herein shall limit Lender's rights to seek additional or

6    different adequate protection or to contest whether the Adequate Protection constitutes sufficient

7    "adequate protection" within the meaning of section 361.

8           3.      Second Lien Adequate Protection.  Second Lien Lenders are entitled to

9    adequate protection of their interests in the Second Lien Prepetition Collateral, in accordance with

10   their respective lien and claim priorities pursuant to the terms of the ICA, pursuant to section 361

11   in connection with or resulting from Debtor's use of the Cash Collateral, the Postpetition

12   Financing and the imposition of the automatic stay.  The adequate protection in favor of Second

13   Lien Lenders as set forth in this Order (the "*Second Lien Adequate Protection*") and the use of the

14   Cash Collateral as authorized by this Order are fair and reasonable; provided, however, nothing

15   herein shall limit Second Lien Lenders' or Second Lien Agent's rights to seek additional or

16   different adequate protection or to contest whether the Second Lien Adequate Protection

17   constitutes sufficient "adequate protection" within the meaning of section 361 (to the extent

18   permitted under and consistent with the ICA).

19          F.      Good Cause.  The Postpetition Financing and relief and rights granted or

20   ~~acknowledge~~ acknowledged pursuant to this Order are necessary, essential and appropriate and

21   are in the best interest of and will benefit Debtor, its creditors and its Estate as its implementation

22   will, among other effects, provide Debtor with the necessary liquidity (a) to minimize disruption

23   to Debtor's business affairs, (b) to preserve and maximize the value of the Estate for the benefit

24   of all creditors of Debtor, and (c) to avoid immediate irreparable harm to Debtor, its creditors, and

25   its assets.

26          G.      Immediate Entry.  Sufficient cause exists for immediate entry of this Order

27   pursuant to Bankruptcy Rules 4001(c)(2).

28          NOW, THEREFORE, upon the record made by Debtor before and at the Interim Hearing,

1   including the Motion and the pleadings and papers filed with the Court, having made the findings

2   of fact and conclusions of law as set forth herein, and after due consideration and good and

3   sufficient cause appearing therefore;

4        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

5        Section 1.    Authorization of Postpetition Financing.

6           1.1    Motion Granted.  The Motion is granted pursuant to Bankruptcy Code

7   sections 364, 363 and 362, and Bankruptcy Rule 4001(c)(2), on the terms and conditions provided

8   in this Order.  This Order shall be effective as of the Petition Date.

9           1.2    Authorization to Borrow.  Debtor is authorized and empowered to

10   immediately obtain the Postpetition Financing and incur obligations to Lender on or after the

11   Petition Date (the "*Postpetition Obligations*," and collectively with the Prepetition Obligations,

12   the "*Obligations*") pursuant to the terms and conditions of the Postpetition Loan Documents,

13   effective as of the Petition Date through and including the Final Hearing.

14           1.3    Postpetition Loan Documents.

15               1.3.1    Authorization.  Debtor is hereby authorized, empowered and

16   directed to enter into, execute, deliver, perform and comply with all of the terms and covenants of

17   the Postpetition Loan Documents and make all the representations therein.

18               1.3.2    Approval.  The Postpetition Loan Documents, and the terms,

19   conditions, covenants and provisions therein, are approved and shall be sufficient and conclusive

20   evidence of the Postpetition Financing, the Postpetition Obligations (including the Postpetition

21   Charges (defined herein)), the Postpetition Lien (defined herein) and the other rights, interests,

22   claims and remedies pursuant thereto, including the releases provided in the Postpetition Loan

23   Agreement (subject to Section 5.1 of this Order).

24               1.3.3    Amendments.  Lender and Debtor may amend, modify, supplement

25   or waive any of the Postpetition Loan Documents or any term, condition, covenant or provision

26   therein to the extent (a) Debtor (i) provides written notice of the proposed amendment to any

27   Committee (or if no Committee is appointed, Debtor's 20 largest unsecured creditors), and the

28   Office of the United States Trustee, and (ii) files a notice of the proposed amendment with the

1    Court, and (b) no objection to the proposed amendment is filed with the Court within the later of:

2    (a) eight business days from the date of service or (b) five business days from the filing of the

3    notice of the proposed amendment, which shall be deemed approved by this Order.

4            1.4    <u>Postpetition Obligations</u>.  The Postpetition Loan Documents shall

5    constitute and evidence the Postpetition Obligations, which obligations shall be binding and

6    enforceable against (a) Debtor, and its successors and assigns, (b) Debtor's Estate, and any

7    successors or representatives thereof (including without limitation a bankruptcy trustee),

8    (c) Debtor's creditors, and each of their successors and assigns, including the Committee, and

9    (d) Guarantors pursuant to the Guaranties.

10            1.5    <u>Application of Proceeds</u>.

11            1.5.1    <u>Application</u>.  All proceeds of Prepetition Collateral (including Cash

12    Collateral), collected on and after the Petition Date, shall be applied first to pay and satisfy the

13    Prepetition Obligations until the Prepetition Obligations are paid and satisfied in full, and then

14    shall be applied to pay and satisfy the Postpetition Obligations, in the manner set forth in the

15    Postpetition Loan Agreement.  All proceeds of Postpetition Collateral shall be applied first to

16    satisfy the Postpetition Obligations  until paid in full and then shall be applied to pay and satisfy

17    the Prepetition Obligations until paid in full.

18            1.5.2    <u>Recharacterization</u>.  In the event that the Court enters an order

19    determining that one or more of the Prepetition Liens securing the Prepetition Obligations was or

20    were not valid or perfected such that the result of such determination is that the total Prepetition

21    Obligations were not fully secured as of the Petition Date with respect to the remaining

22    Prepetition Collateral, the Court reserves the right to amend this section of this Order to provide

23    that a certain portion of the postpetition advances made pursuant to the Postpetition Financing or

24    the Collateral that was applied after the Petition Date to reduce the Prepetition Obligations

25    pursuant to this Order may be recharacterized as payments on Postpetition Obligations.

26            1.6    <u>Payments</u>.

27            1.6.1    Debtor is authorized to and shall make all payments and transfers of

28    interests in property to Lender as provided, permitted or required under the Postpetition Loan

1  Documents (including without limitation the deposit of payments and collections of Collateral

2  into a lock box or other existing prepetition deposit account.  Lender shall be entitled to advance,

3  make payment and deduct for any fees, costs, expenses and other charges as may be provided in

4  the Postpetition Loan Documents on or after the Petition Date (the "*Postpetition Charges*"),

5  including without limitation the payment and reimbursement to Lender of all present and future

6  attorneys' fees (subject to Section 1.2 of this Order), professionals' fees, and other fees, costs and

7  expenses paid or incurred by Lender, all of which shall be and are included as part of the principal

8  amount of the Postpetition Obligations.

9          1.6.2    Postpetition Lender Legal Fees.  With respect to Postpetition

10  Charges consisting of legal fees and related costs incurred by Lender after the date of entry of this

11  Order ("*Postpetition Lender Legal Fees*"), Lender shall provide copies to counsel for Debtor and

12  Committee (if appointed) of invoices for such Postpetition Lender Legal Fees when available, and

13  Debtor and the Committee shall have five business days from the date of delivery of each invoice

14  to file an objection with the Court as to the reasonableness of such Postpetition Lender Legal Fees

15  pursuant to such invoice.  If no objection is timely filed or if an objection is timely filed and

16  overruled by the Court, the Postpetition Lender Legal Fees shall be deemed valid, reasonable and

17  unavoidable Postpetition Charges.

18          1.7    Cash Management Procedures.  All agreements, cash deposit accounts and

19  procedures with respect to the dominion, transfer or possession of the Collateral and proceeds

20  thereof, including Cash Collateral, including without limitation agreements with respect to the

21  recognition and perfection of the interests of Lender in the Collateral held by depository

22  institutions (deposit account control agreements), credit card processors, collectors or facilitators

23  (merchant payment agreements), and cash transport service providers (armored car agreements)

24  (collectively, "*Collateral Agreements*") and lock box accounts, procedures and arrangements, as

25  may be contemplated under the Postpetition Loan Documents, are approved and shall continue in

26  full force and effect without interruption.

27          1.8    Use of Postpetition Financing and Collateral.

28              1.8.1    No Use for Adverse Lender Claims.  Postpetition Financing funds

1   and the Collateral, including Cash Collateral, shall not be used for any purpose relating to or in

2   furtherance of an Adverse Lender Claim (as defined in the Postpetition Loan Agreement),

3   including without limitation the payment of fees and costs incurred by professionals retained by

4   Debtor or the Committee ("*Case Professionals*") relating to such matters.

5           Section 2.          Authorization and Conditions to Use Cash Collateral.

6                   2.1          Authorization to Use Cash Collateral.  Debtor is authorized to use Cash

7   Collateral to satisfy Obligations as required or provided under the Postpetition Loan Documents.

8                   2.2          Delivery of Cash Collateral.  Debtor is authorized and directed to deposit

9   or otherwise deliver all Cash Collateral, regardless of the source, now or hereafter in its

10  possession or under its control, to Lender in a manner satisfactory to Lender promptly upon

11  receipt thereof.

12                  2.3          Cash Collateral in Lender's Possession.  Lender is authorized to collect

13  upon, convert to cash, endorse and enforce checks, drafts, instruments and other forms of

14  payment now or hereafter coming into its possession or under its control and apply such payments

15  in accordance with the Postpetition Loan Documents.

16          Section 3.          Postpetition Lien; Superpriority Expense Status; Adequate Protection.

17                  3.1          Postpetition Lien.

18                          3.1.1    Postpetition Lien.

19                                  3.1.1.1  3.1.1.Lender Postpetition Lien.  Lender shall have and is

20  granted a lien and security interest in and on all right, title and interest of Debtor and Debtor's

21  Estate in all assets, whether now existing or obtained or arising in the future, whether prior to or

22  after the Petition Date, including any and all Collateral (including the Prepetition Collateral) and

23  any and all claims and causes of action arising under sections 502(d), 542, 544, 547, 548, 550 or

24  551, and any recoveries thereof (collectively, "*Avoidance Claims*") and the Professional Fee

25  Reserve Account (as defined on Section 3.1.4.2 of this Order) (collectively, the "*Postpetition*

26  *Collateral*," and collectively with the Prepetition Collateral, the "*Collateral*") (a) as a postpetition

27  lien granted pursuant to section 364(c)(1), (c)(2) and (d)(1), to secure timely performance and

28  satisfaction of the Postpetition Obligations (the "*Postpetition Financing Lien*") and (b) as a

replacement lien pursuant to section 361 to provide adequate protection of Lender's interest in the Collateral to the extent of any diminution in value of the Collateral resulting or arising from the use of Cash Collateral, the Postpetition Financing, the imposition of the automatic stay, and other consequences of the Case (the "*Replacement Lien*," and collectively with the Postpetition Financing Lien, the "*Postpetition Lien")*.

                3.1.1.2 Second Lien Replacement Lien.  Second Lien Agent, on behalf of Second Lien Lenders, shall have and is granted a lien and security interest in and on all right, title and interest of Debtor and Debtor's Estate in all assets, whether now existing or obtained or arising in the future, whether prior to or after the Petition Date, including any and all Collateral (including the Prepetition Collateral) including the Professional Fee Reserve Account (as defined on Section 3.1.4.2 of this Order), however, excluding any and all Avoidance Claims (collectively, the "*Second Lien Postpetition Collateral*," and collectively with the Prepetition Collateral, the "*Second Lien Collateral*") as a replacement lien pursuant to section 361 to provide adequate protection of Second Lien Lenders' interests in the Second Lien Prepetition Collateral to the extent of any diminution in value of the Second Lien Prepetition Collateral resulting or arising from the use of Second Lien Cash Collateral, the Postpetition Financing, the imposition of the automatic stay, and other consequences of the Case (the "*Second Lien Replacement Lien*").

                3.1.2    Postpetition Lien Priority.

                3.1.2.1 3.1.2Lender Postpetition Lien Priority.  The Postpetition Lien shall be and shall continue to be first and senior in priority to all other interests and liens of every kind and nature, whether existing or arising before or after the Petition Date, or whether created consensually, by an order of any court including this Court, or otherwise, including without limitation liens or interests granted or acknowledged in favor of any other person or entity in conjunction with section 363, 364 or any other section of the Bankruptcy Code; provided, however, the Postpetition Lien shall be (a) subject and immediately junior only to (i) certain liens and interests existing as of the Petition Date in and to the Prepetition Collateral that as of the Petition Date were senior in priority to the Prepetition Liens of Lender and only to the extent that such liens and interests are and continue to be (A) not otherwise subordinated in

1  priority, whether under section 510 or by contract, at law or in equity, as to any obligation or lien

2  in favor of Lender (such as the liens and interests in favor of the Second Lien Lender, which are

3  junior and subordinate in priority to the Postpetition Liens and claims in favor of Lender pursuant

4  to the ICA), (B) valid, properly perfected and enforceable, (C) securing obligations that remain

5  outstanding and valid and not otherwise avoided or satisfied, (D) not subject to any claims,

6  counterclaims, defenses, setoffs, recoupment or deduction, (E) not subject to avoidance or

7  subordination pursuant to any provisions of the Bankruptcy Code or any other applicable law, and

8  (ii) the interests of certain Professionals and other beneficiaries in the Carve Out (as defined and

9  to the extent provided in section 3.1.4 of this Order) ((a)(i) through (viii) shall be referred to

10  herein as a "*Permitted Senior Lien*"), and (b) shall be first and senior in priority, and not be

11  subject or subordinate to any lien or interest that is avoided and preserved for the benefit of

12  Debtor or its Estate under section 551.

13  3.1.2.2 Second Lien Postpetition Lien Priority. The Second Lien

14  Postpetition Lien shall be and shall continue to be senior in priority to other interests and liens;

15  provided, however, the Second Lien Replacement Lien shall be (a) subject and immediately

16  junior to (i) the Prepetition Lien in favor of Lender, (ii) the Postpetition Lien in favor of Lender,

17  (iii) certain liens and interests existing as of the Petition Date in and to the Second Lien

18  Prepetition Collateral that as of the Petition Date were senior in priority to the Second Lien

19  Prepetition Liens and only to the extent that such liens and interests are and continue to be (A) not

20  otherwise subordinated in priority, whether under section 510 or by contract, at law or in equity,

21  as to any obligation or lien in favor of Second Lien Agent on behalf of Second Lien Lenders,

22  (B) valid, properly perfected and enforceable, (C) securing obligations that remain outstanding

23  and valid and not otherwise avoided or satisfied, (D) not subject to any claims, counterclaims,

24  defenses, setoffs, recoupment or deduction, (E) not subject to avoidance or subordination

25  pursuant to any provisions of the Bankruptcy Code or any other applicable law, and (iv) the

26  interests of certain Professionals and other beneficiaries in the Carve Out (as defined and to the

27  extent provided in section 3.1.4 of this Order) ((a)(i) through (vi) shall be referred to herein as a

28  "*Second Lien Permitted Senior Lien*"), and (b) shall be senior in priority, and not be subject or

1    subordinate to any lien or interest that is avoided and preserved for the benefit of Debtor or its

2    Estate under section 551.

3                    3.1.3    Postpetition Lien Perfection.  This Order shall be sufficient and

4    conclusive evidence of the validity, perfection and priority of the Postpetition Lien (including

5    with respect to commercial tort claims and Avoidance Actions) and the Second Lien Postpetition

6    Lien, effective as of the date and time of entry of this Order without any further act otherwise

7    required, acknowledged or accepted under federal, state or local requirements or law requiring

8    notice, filing, registration, recording or possession of assets or other act to validate or perfect a

9    security interest or lien, assets including without limitation Collateral Agreements (each, a

10   "*Perfection Act*").  Notwithstanding the foregoing, Lender and Second Lien Agent each is

11   authorized to perform a Perfection Act, and Debtor is authorized and directed to perform such

12   acts to the extent requested by Lender or Second Lien Agent, and in such event, the subject filing

13   or recording office or agency is authorized to accept, file or record any document in regard to

14   such act in accordance with applicable law; in which event all such documents shall be deemed to

15   have been filed or recorded at the time and on the date of entry of this Order.

16                    3.1.4    Carve-out.

17                    3.1.4.1 Fees and Expenses of Case Professionals ("*Professional

18   Fees*") shall be paid only as allowed by this Court subject to their their terms of this Order.

19                    3.1.4.2 Debtor shall provide for the payment of Professional Fees

20   by depositing the amounts listed in the Budget into a professional fee reserve account

21   ("*Professional Fee Reserve Account*") maintained with Debtor's counsel pending allowance of

22   Professional Fees by the Court.  Funds on deposit in the Professional Fee Reserve Account shall

23   be used solely to pay Professional Fees, and any funds remaining in the Professional Fee Reserve

24   Account after payment in full of the final allowed Professional Fees will be delivered to Lender to

25   the extent needed to pay any unsatisfied Obligations.

26                    3.1.4.3 The Prepetition Liens and Postpetition Lien, 364(c)(1)

27   Claim, and Superpriority Claims granted hereunder shall be subordinate and junior only to the

28   interests of the Case Professionals and the United States Trustee (the "*Carve Out Beneficiaries*")

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  to the following (the "*Carve-Out*"): (a) allowed administrative fees pursuant to 28 U.S.C. §

2  ~~section~~ 1930(a)(6), and (b) accrued, unpaid fees and expenses of Case Professionals incurred

3  prior to the Commitment Termination Date, up to the sum of (i) $121,000 in the aggregate *less*

4  (ii) the sum of (A) any payments received by Case Professionals for Professional Fees during the

5  Bankruptcy Case, and (B) the amount of funds remaining in the Professional Fee Reserve

6  Account at such time.

7          3.2    <u>Superpriority Claim</u>.   In addition to and without limiting the Postpetition

8  Lien, the Postpetition Obligations shall also constitute a superpriority administrative expense

9  priority claim with senior priority in payment afforded by section 364(c)(1), which shall have

10  priority in right of payment senior to all other obligations, liabilities, indebtedness and claims of

11  any kind and nature, now in existence or hereafter incurred by Debtor, including without

12  limitation any and all administrative expenses of the kinds specified or ordered pursuant to

13  sections 105, 326, 327, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to a Final Order), 507(a),

14  507(b), 546(c), 726, 1103, 1104, 1113, 1114 and other sections of the Bankruptcy Code,

15  including those resulting from the conversion of the Case pursuant to section 1112, and shall at all

16  times be senior to the rights of Debtor, its Estate, any bankruptcy trustee, any creditor or other

17  party in interest in the Case or any subsequent proceedings under the Bankruptcy Code (the

18  "*364(c)(1) Claim*").   The 364(c)(1) Claim shall include all rights in and shall not be reduced by

19  Avoidance Claims.

20          3.3    <u>Section 507(b) Priority</u>.  In addition to, and without limiting the

21  Postpetition Lien and the Superpriority Claim, Lender shall have a priority unsecured claim

22  pursuant to section 507(b) to the extent of any diminution in value of the Collateral; provided,

23  however, such claim shall not be paid from recoveries of Avoidance Claims, but shall be paid

24  from recoveries of any claims and causes of action arising under section 549 (the "*507(b) Claim*,"

25  and collectively with the 364(c)(1) Claim, the "*Superpriority Claims*").

26          3.4    <u>Adequate Protection</u>.  The adequate protection provided in this Order,

27  including~~,~~ <u>but not limited to,</u> the grant of the Replacement Lien, the 507(b) Claim, ~~and~~ the

28  application of Collateral, <u>and the grant of the Second Lien Replacement Collateral</u> are intended

1   (but are not guaranteed) to provide adequate protection of ~~Lender's interest in the~~ the Lender in

2   the Prepetition Collateral and the Second Lien Lenders in the Second Lien Prepetition Collateral

3   pursuant to section 361 to the extent of any diminution in value in the Collateral and the Second

4   Lien Collateral, respectively, after the Petition Date resulting or arising from the use of Cash

5   Collateral, the Postpetition Financing, the imposition of the automatic stay, and other

6   consequences of the Case.  The priority of Second Lien Replacement Lien and any other adequate

7   protection in favor of Second Lien Agent and/or Second Lien Lenders shall be governed by the

8   ICA and shall be junior in priority to the Prepetition Lien, the Postpetition Lien and the Second

9   Lien Permitted Senior Liens.

10          Section 4.      Default; Rights and Remedies; Relief from Stay.

11          4.1     Events of Default.  The occurrence of any of the following events shall

12   constitute an "*Event of Default*" under this Order:

13                  (a)     Debtor's failure to perform any term, condition or covenant or its

14   obligations under any Postpetition Loan Document;

15                  (b)     An "Event of Default" as defined in the Postpetition Loan

16   Agreement; or

17                  (c)     The termination or expiration of Debtor's authority or ability to

18   borrow the Postpetition Financing or Lender's commitment to provide the Postpetition Financing,

19   whether automatically or upon exercise or notice by Lender as permitted under the Postpetition

20   Loan Documents (a "*Termination Event*").

21          4.2     Rights and Remedies Upon Event of Default.  Upon the occurrence of an

22   Event of Default, Debtor shall be bound by all restrictions, prohibitions and other terms of the

23   Postpetition Loan Documents, and Lender may elect any and all consequences of such Event of

24   Default and shall be entitled to take any act or exercise any right or remedy provided in any

25   Postpetition Loan Document subject to Section 4.3 of this Order.  Notwithstanding the foregoing,

26   Lender shall have no obligation to make advances or provide other financial accommodations, or

27   otherwise perform its obligations under the Postpetition Loan Documents, immediately upon or

28   after the occurrence of an Event of Default or an act, event or condition that with the giving of

notice or the passage of time, or both, would constitute an Event of Default, pursuant to the terms of the Postpetition Loan Documents.

        4.3    <u>Relief from Automatic Stay</u>.  The automatic stay pursuant to section 362 is modified, lifted and vacated without further notice, application or order of the Court to the extent necessary, and shall not be subject to the 14-day stay described by Bankruptcy Rule 4001(a)(3), as follows:

        4.3.1    <u>Non-Default</u>.  Effective immediately (a) to implement the Postpetition Financing pursuant to the Postpetition Loan Documents, but not with respect to the exercise of any right or remedy available upon an Event of Default, (b) to take or permit any Perfection Act, and (c) to assess, charge, advance, deduct and receive payments with respect to the Obligations, and apply such payments to the Obligations pursuant to the Postpetition Loan Documents, and

        4.3.2    <u>Post-Default</u>.  Upon the occurrence of an Event of Default, consistent with any applicable cure periods or notice requirements provided in the Postpetition Loan Documents, as follows:

        4.3.2.1    Effective immediately to take the following actions and exercise the following rights available upon an Event of Default as provided in any Postpetition Loan Document; terminating Debtor's use of cash Collateral, directing Debtor and any account debtor or other parties that may have possession of Cash Collateral to deliver such Cash Collateral directly to Lender, withholding its consent to Debtor's use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide further advances, loans and financial accommodations to or on behalf of Debtor, and terminating Lender's commitment to provide any further advances, loans and financial accommodations to for the benefit of Debtor, but not including Collateral Enforcement Rights (defined herein); and

        4.3.2.2    Upon Debtor's failure to cure an Event of Default within five business days after the delivery of a notice of the Event of Default to the Notice Parties and the filing of a declaration with the Bankruptcy Court and service of such declaration on Debtor setting forth the Event of Default and such notice, to take the following actions and exercise the following rights

1  and remedies with respect to the Collateral, including obtaining possession, foreclosing upon, or

2  conducting a sale of any Collateral ("*Collateral Enforcement Rights*"), or setting off any

3  Obligations with all or any portion of the Collateral or proceeds thereof.  Notwithstanding the

4  foregoing, Debtor or the Committee (if any) shall be able to seek an order of the Court extending

5  the automatic stay to stay such exercise by Lender for "cause."  Upon the filing of such a motion,

6  the automatic stay pursuant to section 362 will not be deemed to be modified, lifted or vacated

7  pursuant to this 4.3.2.2 unless and until the Court enters an Order modifying, lifting, or vacating

8  the automatic stay.  The parties hereto consent to the hearing of any such motion on an

9  emergency basis, subject to the Court's availability.  Upon Lender's request, the Court shall enter

10  a further Order with respect to the grant of relief from the automatic stay as provided herein,

11  although such order is not necessary to and shall not limit the effectiveness of such relief as

12  granted herein.

13          4.4     Right to Credit Bid.  Lender shall have the right to use any or all of the

14  Obligations to credit bid with respect to any sale of all or any portion of the Collateral pursuant to

15  section 363(k).

16          4.5     No Duty to Marshall. Neither Lender nor the Collateral shall be subject to

17  the doctrine of marshaling.

18          Section 5.      Representations; Covenants; and Waivers.

19          5.1     Prepetition Challenge.

20                  5.1.1   5.1Lender Prepetition Challenge.  (a) The Prepetition Obligations

21  shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim,

22  deduction or claim of any kind, and shall not be subject to any further objection or challenge by

23  Debtor or any other party at any time, and the Prepetition Liens shall be deemed legal, valid,

24  perfected, enforceable and unavoidable for all purposes and of first and senior priority subject to

25  only the Permitted Senior Liens, unless and to the extent provided pursuant to an Order of the

26  Court upon an objection or defense or challenge to the legality, validity, perfection,

27  enforceability, priority of the Prepetition Obligations or Prepetition LienLiens, including any

28  avoidance thereof, or any claim, cause of action, or obligation against Lender, or any of its

1    officers, directors, employees, attorneys, professionals, successors and assigns related to or

2    arising out of the Prepetition Loan Documents (collectively, "*Prepetition Challenge*") filed by the

3    Committee (if any) with the Court no later than the earlier of the date that is (ai) 75 days after the

4    Petition Date or (bii) 60 days after the appointment of any Committee.  To the extent either the

5    Prepetition Obligations or the Prepetition Liens are disallowed in whole or in part by the Court,

6    such disallowance shall not affect Lender's right to collect such amounts due from any other

7    person or entity.  To the extent a Prepetition Challenge is withdrawn, denied or overruled, the

8    stipulations specifically challenged in such Prepetition Challenge also shall be binding on

9    Debtor's estates and all parties in interest.estate and all parties in interest.

10             5.1.2    Second Lien Prepetition Challenge.  The Second Lien Prepetition

11    Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment,

12    counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or

13    challenge by Debtor or any other party at any time, and the Second Lien Prepetition Liens shall

14    be deemed legal, valid, perfected, enforceable and unavoidable for all purposes and of first and

15    senior priority subject to only the Prepetition Liens and the Second Lien Permitted Senior Liens,

16    unless and to the extent provided pursuant to an Order of the Court upon an objection or defense

17    or challenge to the legality, validity, perfection, enforceability, priority of the Second Lien

18    Prepetition Obligations or Second Lien Prepetition Liens, including any avoidance thereof, or any

19    claim, cause of action, or obligation against Second Lien Agent or any Second Lien Lender, or

20    any of their officers, directors, employees, attorneys, professionals, successors and assigns related

21    to or arising out of the Second Lien Prepetition Loan Documents (collectively, "*Second Lien*

22    *Prepetition Challenge*") filed by Debtor or the Committee (if any) with the Court no later than the

23    earlier of the date that is (i) 75 days after the Petition Date or (ii) 60 days after the appointment of

24    any Committee.  To the extent the Second Lien Prepetition Obligations or the Second Lien

25    Prepetition Liens are disallowed in whole or in part by the Court, such disallowance shall not

26    affect Second Lien Lenders' right to collect such amounts due from any other person or entity.

27    To the extent a Second Lien Prepetition Challenge is withdrawn, denied or overruled, the

28    stipulations specifically challenged in such Second Lien Prepetition Challenge also shall be

1    binding on Debtor's estates and all parties in interest.

2            5.2    Debtor's Waivers.  Debtor irrevocably waives any rights (a) to seek

3    authority prior to satisfaction of the Obligations in full, to obtain postpetition loans or other

4    financial accommodations pursuant to section 364(c) or (d) other than from Lender unless such

5    authority results in the Obligations being indefeasibly paid in full, (b) to challenge the application

6    of any payments authorized by this Order pursuant to section 506(b), or to assert that the value of

7    the Prepetition Collateral was or is less than the Prepetition Obligations, and (c) to propose or

8    support a plan of reorganization that is inconsistent with the Postpetition Loan Documents unless

9    Lender otherwise consents.

10           5.3    Debtor's Releases.  The releases by Debtor of claims, causes of action,

11   defenses, liabilities, damages or obligations against Lender or other parties and persons pursuant

12   to the Postpetition Loan Documents are approved, effective and binding.

13           5.4    Section 506(c) Claims.  Upon the entry of a Final Order, no costs or

14   expenses of administration incurred in the Case at any time shall be charged against any Lender,

15   Second Lien Lender, or the Collateral pursuant to sections 105, 326, 327, 330, 331, 503(b),

16   506(c), 507(a) or the "equity exception" in section 552(b), section 726, or any other provision of

17   the Bankruptcy Code, or any similar principle of law without the prior written consent of Lender

18   and Second Lien Lender, and no such consent shall be implied from any other action, inaction or

19   acquiescence by Lender or Second Lien Lender.

20           Section 6.    Other Rights and Obligations.

21           6.1    No Modification or Stay of This Order.  Notwithstanding any other order

22   of the Court or act by any party, the acts taken by Lender in accordance with this Order, the

23   Postpetition Obligations, and all rights, interests, remedies, benefits, consents, claims and

24   obligations, including without limitation the Postpetition Obligations, the Postpetition Lien and

25   the Superiority Claims, shall not be modified, amended or reduced or restricted without the

26   express consent of Lender and shall be governed in all respects by the original provisions of this

27   Order and shall remain valid and in full force and effect pursuant to section 364(e).  If any or all

28   of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1 | modification, vacation or stay shall not affect (i) the validity of any Postpetition Obligations or

2 | the Adequate Protection owing to Lender or the Prepetition Lender incurred prior to the actual

3 | receipt by Lender or the Prepetition Lender, as applicable, of written notice of the effective date

4 | of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any

5 | Postpetition Lien or Superpriority Claim.  For purposes of section 364(e), "appeal" shall include

6 | any proceeding for reconsideration, amending, vacating, rehearing or re-evaluation of this Order

7 | by this Court or any other tribunal.

8 |       6.2    Power to Waive Rights; Duties to Third Parties.  Lender shall have the

9 | right to waive any interest, claim, right, remedy or privilege in favor of Lender provided for or

10 | acknowledged in any Postpetition Loan Document or this Order (collectively, *Lender Rights*"),

11 | and shall have no obligation or duty to any other party with respect to or by reason of Lender's

12 | exercise or enforcement, or delay or failure to exercise or enforce any Lender Right.

13 |       6.3    Reservation of Rights.  This Order is in addition to and without prejudice

14 | to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the

15 | Postpetition Loan Documents or any other applicable agreement or law.

16 |       6.4    "Responsible Person."  By accepting any budget submitted by Debtor or by

17 | taking any actions pursuant to or authorized by the Postpetition Financing Documents, Lender

18 | shall not deemed to be (a) in control of the operations or liquidation of Debtor, or (b) a

19 | "responsible person" with respect to the operation, management or liquidation of Debtor.

20 |       6.5    Binding Effect.  This Order shall be and shall continue to be binding upon

21 | Debtor, all parties in interest in the Case, and each of their respective successors and assigns,

22 | including any trustee, notwithstanding any further order, including dismissal of the Case of

23 | conversion of the Case to a case under another chapter of the Bankruptcy Code.

24 |       6.6    Survival of Order.  The provisions of this Order and any actions taken

25 | pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization

26 | in the Case; (ii) converting the Case to a case under chapter 7 of the Bankruptcy Code; or

27 | (iii) dismissing the Case; and (b) shall continue in full force and effect notwithstanding the entry

28 | of any such order, and the claims, liens and security interests granted pursuant to this Order shall

1   maintain their priority as provided by this Order until all of the Postpetition Obligations are

2   indefeasibly paid in full and discharged in accordance with the terms of the Postpetition

3   Financing Documents.  The Postpetition Obligations shall not be discharged by the entry of any

4   order confirming any plan of reorganization in the Case, and Debtor shall, and shall be deemed to,

5   waive any such discharge pursuant to section 1141(d)(4).

6           6.6      Final Hearing and Response Dates.  A final hearing on the Motion pursuant

7   to Bankruptcy Rule 4001(c)(2) (the "*Final Hearing*") shall be held on _____, at

8   _____ a.m. before this Court.  Objections and replies shall be filed and served in accordance

9   with local court rules.

10                                          ###

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

.

# EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Mette H. Kurth (SBN 187100)<br>Beth Brownstein (*pro hac vice* application pending)<br>ARENT FOX LLP<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA 90013-1065<br>Telephone: 213.629.7400<br>Facsimile:  213.629.7401<br>mette.kurth@arentfox.com<br>beth.brownstein@arentfox.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Proposed Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>NEW MEATCO PROVISIONS, LLC, d/b/a KING SEAFOOD | CASE NO.: 2:13-bk-22155<br>CHAPTER: 11 |
|---|---|
| | **STATEMENT PURSUANT TO LBR 4001-2 REGARDING CASH COLLATERAL STIPULATIONS** |
| Debtor(s). | DATE: TBD<br>TIME: TBD<br>COURTROOM:  Courtroom 1645<br>PLACE:       255 E. Temple Street<br>               Los Angeles, CA 90012 |

Secured creditor: <u>(1) Wells Fargo Bank, N.A. and (2) the Agent for the Second Lien Lenders</u>

The Debtor, through a separately filed motion, has requested the approval of a stipulation providing for the use of cash collateral, or post-petition financing, or both. Attached to the motion as Exhibit 1 and to the accompanying Declaration as Exhibit 1 is a true and correct copy of the agreement for use of cash collateral or post-petition financing (Agreement), And proposed form of order thereon, which Agreement and Order contain the following provisions:

| | Description of Provision | Page No.: | Line No. (if applicable) |
|---|---|---|---|
| ☐ | Cross-collateralization clauses | | |
| ☒ | Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt | Agmt pg. 7-8, Order at 5.1.1 | |
| ☒ | Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien | Agmt pg. 7-8, Order at 5.1.1 | |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| Description of Provision | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☒ Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | Agmt pg. 14, Order at 5.4 | |
| ☒ Releases of liability for the creditor's alleged prepetition torts or breaches of contract | Order at 5.3 | |
| ☐ Waivers of avoidance actions arising under the Bankruptcy Code | | |
| ☒ Automatic relief from automatic stay upon default, conversion to chapter 7, or appointment of a trustee | Order at 4 | |
| ☒ Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens | Order at 3.1.3 | |
| ☒ Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549 | Agmt pg. 4, Order at G | |
| ☒ Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | Agmt pg. 14 | |
| ☐ Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order | | |
| ☒ Provisions providing for the paying down of prepetition principal owed to a creditor | Agmt pg. 6 | |
| ☐ Findings of fact on matters extraneous to the approval process | | |

| May | Mette H. Kurth | /s/ Mette H. Kurth |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013

A true and correct copy of the foregoing document entitled (*specify*):  **EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (A) AUTHORIZING POSTPETITION FINANCING; (B) GRANTING SECURITY INTERESTS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) MODIFYING THE AUTOMATIC STAY; (D) GRANTING ADEQUATE PROTECTION; AND (E) SCHEDULING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 17, 2013**I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **May 17, 2013** | ADRIANE I. LARK | /s/ Adriane I. Lark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Craig H Averch on behalf of Interested Party Wilmington Trust, National Association, as Administrative Agent under that certain Second Lien Senior Secured Loan and Guaranty Agreement, dated as of April 18, 2011
caverch@whitecase.com

William S Brody on behalf of Interested Party Courtesy NEF
wbrody@buchalter.com, rreeder@buchalter.com;IFS_filing@buchalter.com

Mette H Kurth on behalf of Debtor New Meatco Provisions, LLC
kurth.mette@arentfox.com

Mary D Lane on behalf of Interested Party Courtesy NEF
mal@msk.com, mec@msk.com

Craig G Margulies on behalf of Interested Party Courtesy NEF
craig@marguliesfaithlaw.com,
staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com

Scott H Olson on behalf of Creditor ML Long Beach, LLC
solson@seyfarth.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov, dare.law@usdoj.gov;kelly.l.morrison@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**